378 A.2d 425

**Charles D. HUGHEY, Appellant,**

v.

**ROBERT BEECH ASSOCIATES, a/k/a Beech Employment Agency.**

Superior Court of Pennsylvania.

Argued April 15, 1976.

Decided Oct. 6, 1977.

Rehearing Denied Oct. 26, 1977.

8

Kim Darragh, Pittsburgh, for appellant.

Richard F. Welch, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This appeal is taken from an order of the Court of Common Pleas of Allegheny County, Civil Division, sitting en banc, dismissing plaintiff's exceptions to a non-jury verdict for defendant and entering judgment on that verdict.

Plaintiff-appellant, Charles Hughey, contacted defendant-appellee, Beech Employment Agency, in May of 1973 in response to an advertisement for a "fee paid" job opportunity—that is, one in which the employer agreed to pay the employment agency's fee. Beech sent appellant to the employer, Thrift Drug Company, which employed him at a starting salary of $10,200.00 a year. Thrift, pursuant to a contract with Beech, paid Beech its fee of $1,224.00. Appellant signed an agreement with Thrift to the effect that he was indebted to Thrift in the amount of $1,224.00, and that the indebtedness would be cancelled at the rate of $306.00 for each three months of employment completed, with the result that the debt would be eradicated at the end of one year's employment.

Appellant's employment began on June 19, 1973 and ended on July 20, 1973, when a back problem he had developed on the job forced him to resign. He paid Thrift $1,224.00 pursuant to his contract and asked Beech for a refund of $1,139.00, the difference between the amount the agency received and the amount it was entitled to under the Act of July 31, 1941, P.L. 616, as amended, 43 P.S. 574(m), effective November 16, 1972, which provides in pertinent part:

"No employment agency shall charge a fee for its services until the applicant has accepted a position. . . .

For a position known to be of a duration of ten (10) weeks or less or for a position that the applicant loses within a period of ten (10) weeks after the starting date, the fee will be a maximum of ten (10%) percent of the amount earned, except if the applicant fails to report as agreed or resigns to accept employment elsewhere, then the agency shall be entitled to its full fee."

When appellee refused to make a refund, appellant brought this assumpsit action. His earnings for the month of his employment amounted to $850.00. The statute appears, therefore, to limit defendant's fee to $85.00, and it makes no difference by whom it is paid. Without reference to the identity of the payor, "fee" is defined in Section 536(6) as follows:

"[A]ny money or other valuable consideration paid or promised to be paid for services rendered or to be rendered by any person conducting an employment agency of any kind under the provisions of this act. . . ."

When the provision in Section 574(m), permitting the fee to be charged upon the applicant's acceptance of a position is read together with the provision limiting the fee in the event of a forced termination within ten weeks, by necessary implication, there is a requirement that upon such a termination, a refund of the amount exceeding the ten percent limitation be made.

The lower court stated, in its opinion in support of the order of the court en banc, that appellant's claim to the refund had "obvious first blush appeal," but since the statute relied on was inapplicable to appellant's contract with Thrift, as neither party was an employment agency, and that contract did not contain any provision for the contingency which occurred, there was "no basis for shifting his loss to defendant." We cannot agree.[1]

Appellant has established a cause of action under a subordinate category of assumpsit known as "money had and received." The court in *First Nat'l Bank v. Carroll*

---

1. In fairness to the trial court, it should be noted that the precise theory on the basis of which we allow recovery here—unjust enrichment—has not been explicitly relied on by appellant. However, in arguing that the money is rightfully his and that to allow Beech to keep it would be to "bring about an injustice," appellant comes close enough. To deny him recovery because of his failure to use the exact words "unjust enrichment" would be an absurd elevation of form over substance. In *Commonwealth v. Conner*, 462 Pa. 282, 286, 341 A.2d 81, 83 (1975), the court stated: "[C]ourts should act by whatever procedural channels appear necessary to do justice when the record makes plain a right to relief." See also *Commonwealth v. O'Bryan*, 243 Pa.Super. 289, 365 A.2d 856 (1976). Also apropos is Mr. Justice Roberts' observation in *Commonwealth v. Wiggins*, 472 Pa. 95, 371 A.2d 207 (1977) (Opinion in Support of Reversal) Note 2 at 216:

    "[T]his Court cannot deny [an appellant] relief simply because his brief does not articulate a particular application of the legal theory which supports his claim."

    We can see no possibility of unfair surprise to appellee resulting from the manner in which we resolve the issue here.

*Twp.*, 150 Pa.Super. 241, 246, 27 A.2d 527, 530 (1942) referred to a long line of decisions to the following effect:

> "Where one has in his hands money which in equity and good conscience belongs and ought to be paid to another, an action for money had and received will lie for the recovery thereof. No privity of contract is necessary to sustain this action, for the law, under these circumstances, implies a promise to pay." [Citation omitted.]

And it makes no difference that it is from someone other than the plaintiff that the defendant received the money. *Caskie v. Philadelphia Rapid Transit Co.*, 321 Pa. 157, 161, 184 A. 17, 19 (1936). There the court said:

> "The inquiry is, has the defendant, in the circumstances stated, received money or property which he is not entitled to keep and which in equity and good conscience should be paid to plaintiff in accordance with principles of natural justice? If he has, the plaintiff may recover."

Considering the two parts of the question, we first ask whether the $1,139.00 appellant wants is money that appellee "is not entitled to keep." The provision in Section 574(m), limiting the agency's fee to ten percent under the circumstances here, provides us with an affirmative answer.

■ Does equity require that this money be paid to appellant? We find that it does. Appellant paid $1,224.00 and received $850.00 for a month's work. In other words, he ended up paying Thrift Drug Company $374.00 for the privilege of working for it. We experience no difficulty in concluding that this is an inequitable result.

■ We are of the opinion that Beech's right to retain money received from Thrift, on account of appellant's employment with Thrift, is conditioned upon appellant's remaining employed with Thrift under the terms of the statute. Because of appellee's injury, that condition failed to occur. Since appellant reimbursed Thrift according to the terms of his agreement, he was a proper person to recover from Beech the amount paid to it less ten percent. This recovery leaves all parties concerned in the position the

statute contemplated they should be in, and the theory of money had and received provides for such a remedy, at least where, as here, there are no countervailing equitable considerations. The court reached a similar conclusion in *Klass v. Twin City Federal Savings & Loan Ass'n*, 291 Minn. 68, 190 N.W.2d 493 (1971). The plaintiff there was the tenant of the defendant-Association, whose lease provided for an added amount of rent equal to the amount of the real estate taxes on the property. The property was ultimately condemned. A state statute required the taxes paid during the pendency of the condemnation proceedings to be included in the condemnation award, and the Association's award accordingly included such a sum, to which plaintiff claimed he was entitled. The court summarized the conclusion of the lower court, with whom it agreed, as follows:

> "[The] practical effect of [the statute] was to abate the real estate tax payable in 1966. The court reasoned that although the lease described the taxes 'as additional rent,' the obvious intention of the parties was that the tenant would simply pay whatever taxes were due in addition to a fixed amount. Since, as a practical matter, no taxes were payable in 1966, the court concluded that the tenant who provided the fund was entitled to the repayment rather than the lessor who received the money from the tenant and paid the tax in its own name. . . .
>
> .     .     .     .     .
>
> The cases dealing with unjust enrichment or money had and received support recovery in this situation."

Although the posture of the cited case was different from the case at bar, the difference hardly affects the equities of the situation from the plaintiff's point of view.[2] In both cases recovery was sought from the party who would be unjustly enriched by the party who was out-of-pocket. In this case, these equities and the policies underlying them, 43 P.S. 574(m) compel a conclusion that appellant is entitled to the excess fee retained by appellee.

2. The cases would be almost identical if in the instant case Robert Beech Associates had refunded the excess money to Thrift and Mr. Hughey had sued Thrift.

Accordingly, the judgment is reversed and the court below is directed to enter judgment for appellant in the amount of $1,139.00 plus interest.