404 A.2d 1296

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**William GRAVELY, Appellant.**

Supreme Court of Pennsylvania.

Argued April 23, 1979.

Decided July 6, 1979.

Joshua M. Briskin, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., William C. Turnoff, Asst. Dist. Atty., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION

EAGEN, Chief Justice.

Appellant, William Gravely, was convicted by a jury of murder of the second degree in connection with the death of Denise Bennett. Following a denial of post-verdict motions,

judgment of sentence of life imprisonment was imposed. This direct appeal followed.

The Commonwealth argues the issues now advanced by Gravely are not properly preserved for appellate review since they were not included in written post-verdict motions. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975). A brief raising the issues was presented to the post-verdict motion court, and the court considered the issues. Since a majority of this Court has heretofore considered such a brief, along with consideration of the issues raised therein by the trial court, sufficient to preserve issues for review under *Commonwealth v. Blair*, supra, on the basis of substantial compliance with Pa.R.Crim.P. 1123(a), we must reject the Commonwealth's argument.[1] *Commonwealth v. Slaughter*, 482 Pa. 538, 394 A.2d 453 (1978); *Commonwealth v. Hitson*, 482 Pa. 404, 393 A.2d 1169 (1978); *Commonwealth v. Jones*, 478 Pa. 172, 386 A.2d 495 (1978); *Commonwealth v. Pugh*, 476 Pa. 445, 383 A.2d 183 (1978); *Commonwealth v. Perillo*, 474 Pa. 63, 376 A.2d 635 (1977); *Commonwealth v. Grace*, 473 Pa. 542, 375 A.2d 721 (1977).

But, this Court's experience with *Commonwealth v. Grace*, supra, and its progeny has not been very satisfying. Counsel have more often than not failed to include the briefs in the record and, indeed, have often failed to even mention a brief was presented or filed in the trial court in the oral arguments and briefs before this Court. This unsatisfactory situation is perhaps best typified by *Commonwealth v. Slaughter*, supra, wherein we had to grant reargument because counsel had failed to adequately advise us of the existence of a brief. Accordingly, in order to conclude this unsatisfactory situation, we now rule that sixty days after the filing of this opinion, only those issues included in

---

1. We have not considered oral presentation adequate to preserve the issues since *Commonwealth v. Blair*, supra. See, e. g., *Commonwealth v. Hagans*, 483 Pa. 415, 397 A.2d 412 (1979), and *Commonwealth v. Waters*, 477 Pa. 430, 384 A.2d 234 (1978). Also, we have refused to consider a brief adequate where the trial court refuses to consider the issues presented in that manner. See, e. g., *Commonwealth v. Carrillo*, 483 Pa. 215, 395 A.2d 570 (1978).

post-verdict motions will be considered preserved for appellate review. We caution that this ruling applies to every post-verdict motion which is filed sixty days hence and to any motion which is already filed, but which may still be supplemented after sixty days from this date. Our ruling is prospective only because of the possibility of reliance by counsel on prior decisions of this Court. Cf. *Commonwealth v. Bailey*, 463 Pa. 354, 344 A.2d 869 (1975).

With that unsatisfactory situation laid to rest, we shall now consider the merits of Gravely's complaints.

█ Gravely first complains that his trial, which followed an earlier mistrial, caused him to be placed twice in jeopardy for the same offense in violation of the United States and Pennsylvania Constitutions.[2]

Gravely was originally brought to trial on January 26, 1976, on the murder indictment. During the course of that trial, the Commonwealth called as a witness a veteran police officer, Detective McMillan, to relate the circumstances under which Gravely had provided police with an incriminatory statement. During cross-examination, McMillan responded to a question put forth by defense counsel in an attempt to pinpoint the exact moment during Gravely's police interview when he requested the assistance of counsel. His response

2. In *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977), a majority of this Court agreed that an order denying a pretrial motion to dismiss on double jeopardy grounds was immediately appealable. See also *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Commonwealth v. Haefner*, 473 Pa. 154, 373 A.2d 1094 (1977).

Before commencement of his second trial, Gravely filed an "Application for Dismissal of the Prosecution" asserting he was entitled to be discharged on the double jeopardy grounds discussed textually. (See footnote 4, infra.) The application was denied, and no appeal was taken from the order of denial at that time. Following his conviction, Gravely raised double jeopardy grounds in his post-trial motions.

Because the instant appeal was taken in December of 1976, some four months prior to our decision in *Bolden*, supra, we cannot say that Gravely's pretrial failure to appeal from the order denying his application was a waiver of his asserted double jeopardy claim. See *Commonwealth v. Potter*, 478 Pa. 251, 256 n. 3, 386 A.2d 918, 920 n. 3 (1978).

indicated Gravely sought the assistance of counsel after "[h]e told me he killed Denise and . . . after I told him he had flunked the polygraph exam." Defense counsel immediately moved for a mistrial, which, after an in-camera conference, was granted.

Although conceding the testimony which caused the mistrial was "not . . . caused by the [prosecutor]," Gravely argues that "the Commonwealth, through its witness, blatantly disregarded the Defendant's rights." Therefore, he continues, the "mistrial was attributable to the Commonwealth" and Gravely is entitled to be discharged.

> " 'From our decisions in *Commonwealth v. Metz*, 425 Pa. 188, 228 A.2d 729 (1967); *Commonwealth v. Warfield*, 424 Pa. 555, 227 A.2d 177 (1967), and *Commonwealth ex rel. Montgomery v. Myers*, 422 Pa. 180, 220 A.2d 859 (1966) has developed the rule that a defendant who has moved for a mistrial in response to prosecutorial misconduct may be retried if the prosecution has not invited the mistrial in order to secure another, possibly more favorable opportunity to convict the accused. [Footnote omitted.] This is because society's interest in preventing the guilty from going unpunished outweighs the risk of harassment and the burdens the defendant will incur in going through a second trial.'

> Subsequent decisions in the United States Supreme Court, which are binding on the states, express a similar view:

> 'The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where "bad-faith conduct by judge or prosecutor," *United States v. Jorn*, 400 U.S. 470 at 485, 91 S.Ct. 547, 27 L.Ed.2d 543 [(1971) plurality opinion], threatens the "[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict" the defendant. *Downum v. United States*, 372 U.S. 734, 736, [83 S.Ct. 1033] 10 L.Ed.2d 100, 102–03 (1963).'

*United States v. Dinitz,* . . . 424 U.S. 600 at 611, 96 S.Ct. 1075 at 1081, 47 L.Ed.2d 267 at 276 [(1976)] (additional citations omitted). Similarly, in *Lee v. United States,* 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977), the Supreme Court stated:

> 'It follows under *Dinitz* that there [is] no double jeopardy barrier to [an accused's] retrial unless the judicial or prosecutorial error that prompted [a defendant's mistrial] motions was "intended to provoke" the motions or was otherwise "motivated by bad faith or undertaken to harass or prejudice" . . . ' *Id.* at 33, 97 S.Ct. at 2148, 53 L.Ed.2d at 89."

*Commonwealth v. Potter,* 478 Pa. 251, 261–62, 386 A.2d 918, 922–23 (1978) (opinion in support of affirmance).

Our review of the record is convincing that this is not an instance where a subsequent trial is barred because of double jeopardy protections.[3]

The events leading to the end of the first trial appear in the record as follows:

While Detective McMillan testified on direct examination concerning the circumstances surrounding Gravely's statement, the following occurred:

> "[Detective McMillan]: At that time, after having informed him of his rights and what I am going to question him about, he stated to me that he had no knowledge of it and he would be willing—
>
> "[District Attorney]: Sir, I interrupted you there.
>
> "[Defense Counsel]: I ask he be permitted to complete his answer.
>
> "[District Attorney]: I have no objection to that, your Honor. I will withdraw it.
>
> State what he said, sir.
>
> "The Court: All right.

---

**3.** Assuming Pa.Const. art. 1 § 10 would apply instantly, *Commonwealth v. Sparrow,* 471 Pa. 490, 370 A.2d 712 (1977); *Commonweaalth v. Potter,* supra, we believe the same standards should be applied under both federal and state provisions.

"[Detective McMillan]: He asked me if it would be all right if he could take a polygraph examination to show that he had nothing to do with this.

"[District Attorney]: Fine, Your Honor, I wasn't seeking to hide anything. I didn't know counsel wanted that to come in. I know what the state of the law is in that regard.

"[District Attorney]: All right. After he asked you if he could take a polygraph examination, what did you do?

"[Detective McMillan]: Well, we went to another room in the Police Administration Building.

"[District Attorney]: To the Polygraph Room?

"[Detective McMillan]: Yes, sir.

"[District Attorney]: And was the defendant given the polygraph test?

"[Detective McMillan]: Yes, sir."

Thereafter, defense counsel objected to any further questioning concerning the polygraph examination and the court ruled:

"Well, to the extent that reference has been made to it, I see nothing objectionable up to this point; however, I rule and reference to it should be omitted, and I so rule.

\* \* \* \* \* \*

"Excuse me a moment. I want to explain to the jury the results of a polygraph test are not permitted to be related to the jury. The reason being that the polygraph examination which is what is commonly known as the lie detector test has not achieved such recognition by the courts as to permit the results of the tests to be related to you.

"The record at present, therefore, is merely that a test was given, and I have ruled as you have heard that I don't want any further reference to such a test.

"Now I tell you very bluntly that you are not to wonder or speculate on what happened during the test because that is not permitted and I ask that my instructions in this connection of which I have just given to you be implicitly obeyed."

The Commonwealth carefully adhered to the court's ruling, and no further mention of the polygraph examination or its result was made during direct examination which continued until court recessed for the day. The following morning, direct examination of Detective McMillan resumed and, again, no reference to the polygraph examination was made. It was not until later that day, in response to detailed cross-examination, that the prejudicial disclosure was made.

The record thus indicates that the prosecution initially prevented its witness from testifying concerning the polygraph examination; that testimony concerning the polygraph examination was presented only upon defense counsel's request; that, once the court ruled further reference to the polygraph examination should be precluded, the prosecution at no point mentioned the polygraph again during its case-in-chief; and, that only during detailed cross-examination was the prejudicial disclosure made.

The conduct illustrated by these facts is not that of prosecutorial misconduct or "overreaching." Rather, it appears the prosecution diligently avoided reference to the polygraph examination after having been so instructed by the court. The blurting out of the polygraph examination results by the Commonwealth witness during the intricate cross-examination certainly does not evidence "prosecutional misconduct designed to secure a more favorable opportunity to convict the accused." *Commonwealth v. Wiggins*, 472 Pa. 95, 101, 371 A.2d 207, 210 (1977) (opinion in support of affirmance); see also *Commonwealth v. Potter*, supra. We, therefore, conclude, after a review of the record, that Gravely is not entitled to relief on this basis.[4]

4. Gravely, collateral to this argument, also contends, relying upon our holding in *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432 (1973), vacated 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), on remand 455 Pa. 622, 314 A.2d 854 (1974), cert. denied 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974), that he was placed twice in jeopardy for the same offense when he was brought to trial on both the murder and rape indictments when his first trial involved only the murder indictment. The rape indictment was nolle prossed.

However, this theory of error, unlike the theory of error discussed in the text asserting imputed prosecutorial overreaching, was not

Gravely next complains he "was deprived of his constitutional right to assistance of counsel of his choice." The following facts are relevant:

On August 8, 1975, the court appointed counsel to represent Gravely. A hearing on a motion to suppress was scheduled for December 8, 1975. On that date counsel, retained by Gravely's family, appeared and requested a continuance of the hearing saying he needed time to prepare.

After ascertaining that Gravely's court-appointed counsel was prepared to proceed on the suppression motion, the court denied private counsel's request for the continuance because "[i]t seems to us, with less than two months to go for the running of the Rule 1100 date and the continued representation of the defendant by [court-appointed counsel] and the fact that this case has been continued and listed today and must be heard, that the case should go on."

The court allowed Gravely's private counsel to enter his appearance on Gravely's behalf and to assist court-appointed counsel at the suppression hearing. As a result, Gravely was represented at the suppression hearing by *both* court-appointed counsel and private counsel.

■ Specifically, Gravely contends that the denial of the request for continuance acted to deprive him of his constitutional right to assistance of counsel of his choice.

However, even if we assume the denial of the requested continuance was error, Gravely is not entitled to relief. "Reversal and new trial is warranted only where the denial of the right to counsel of choice at a pretrial proceeding so prejudices the accused as to infect the subsequent trial with an absence of fundamental fairness." *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978); see also *Crooker v. California*, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958).

included in Gravely's pretrial "Application for Dismissal of the Prosecution" and thus is not properly preserved for appellate review. See Pa.R.Crim.P. 306(e); *Commonwealth v. Peters*, 473 Pa. 72, 373 A.2d 1055 (1977) (per Eagen, C. J., with one justice joining and three justices specially concurring); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

Gravely makes no such assertion of prejudice[5] and, therefore, is not entitled to relief.

Gravely next argues he is entitled to relief because the verdict of guilty of murder of the second degree coupled with the inability of the jury to reach a verdict as to the rape indictment[6] renders the verdicts "so inconsistent that they cannot be amended by the court."

In the past, however, we have stated:

"[E]ven if it were assumed that the two verdicts were logically inconsistent, such inconsistency alone could not be grounds for a new trial or for reversal. 'It has long been the rule in Pennsylvania and in the federal courts that consistency in a verdict in a criminal case is not necessary.' *Commonwealth v. Parrotto*, 189 Pa.Super. 415, 419, 150 A.2d 396 (1957)."

*Commonwealth v. Tallon*, 478 Pa. 468, 478, 387 A.2d 77, 83 (1978) (opinion in support of affirmance); see also *Commonwealth v. Strand*, 464 Pa. 544, 347 A.2d 675 (1975); *Commonwealth v. Carter*, 444 Pa. 405, 282 A.2d 375 (1971). Thus, Gravely is not entitled to relief because of possibly inconsistent verdicts.

Judgment affirmed.

NIX, J., filed a concurring opinion.

5. In fact, the only assertions made by Gravely evidencing prejudice are that private counsel was not adequately prepared; that, as a result, private counsel was unable "to exercise enlightened judgments as to the strategical maneuvers for court appointed counsel to take"; and, that, in at least three instances, there was confusion and uncertainty as to the examination of witnesses at the suppression hearing.

Gravely *does not assert* that the suppression court's ruling on the motion to suppress was incorrect; that court-appointed counsel was not adequately prepared; that court-appointed counsel was ineffective; or, that any error was caused by private counsel's lack of preparation.

6. Gravely actually asserts "the jury acquitted the defendant of the rape charge." However, this factual allegation is not supported by the record. Rather, the record reveals the jury was unable to reach a verdict on the rape indictment and, as a result, a mistrial was declared as to that indictment.

ROBERTS, J., filed a concurring opinion in which LARSEN, J., joins.

MANDERINO, J., filed a dissenting opinion.

NIX, Justice, concurring.

I am pleased to learn that the majority has belatedly recognized the fallacy of allowing a brief, whether filed or not, to satisfy the explicit requirements of Pa.R.Crim.P. 1123(a). *See Commonwealth v. Pugh*, 476 Pa. 445, 453, 383 A.2d 183 (1978) (Dissenting Opinion, Nix, J.) *Commonwealth v. Jones*, 478 Pa. 172, 180, 386 A.2d 495, 499 (1978) (Dissenting Opinion, Nix, J.).

Again I must stress that this is not a fastidious adherence to form over substance. As we attempted to stress in *Commonwealth v. Waters*, 477 Pa. 430, 384 A.2d 234 (1978) strict compliance with the provisions of Pa.R.Crim.P. 1123(a) is necessary to enhance the quality of review.

Where boiler plate variety motions are filed, it is often difficult, if not impossible, to determine with precision the issues actually argued before the court below. The trial court's opinion may not refer to all questions touched upon in oral argument; the trial court may *sua sponte* address an issue not presented by the parties; and finally, the court may misperceive the issue actually urged by the party.

In sum, the insistence upon the requirement of specific written post-verdict motions in accordance with Rule 1123(a) enhances the quality of review; encourages professional advocacy; discourages pursuit of frivolous claims; and promotes judicial economy.

*Id.*, 477 Pa. at 435, 384 A.2d at 237. (footnote omitted.)

My only regret is that the majority, in spite of its delayed recognition of the fallacy of *Grace*,[1] exacerbates the situation by now adopting a prospective rule to enforce a directive that was made crystal clear with the filing of *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975), more

1. *Commonwealth v. Grace*, 473 Pa. 542, 375 A.2d 721 (1977).

than four years ago. However, since in my view the issue raised in this appeal was not properly preserved for review, I join in the mandate of the Court affirming the judgment of sentence.

ROBERTS, Justice, concurring.

I

Appellant did not present the issues the majority now reaches on the merits to the trial court in written post-verdict motions. Pennsylvania Rule of Criminal Procedure 1123(a) and this Court's expressly prospective mandate in *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975), therefore, preclude consideration of the merits of appellant's claims and demand that judgment of sentence be affirmed. Nonetheless, Mr. Chief Justice Eagen reaches the merits of appellant's claims and proposes that now, in June of 1979, six years after adoption of Rule 1123(a) and more than four years after *Blair*, this Court should perpetuate for sixty more days further disregard of Rule 1123(a) and of *Blair* by some trial courts and counsel. I cannot support this proposal.

Instead of enforcing Rule 1123(a) and its expressly prospective application announced in *Blair*, the Chief Justice proposes that this Court now adopt a new and additional prospective rule that sixty days from the filing of this decision, the requirements of Rule 1123(a) will be strictly enforced. The result is that in September 1979, fifty-five months after *Blair* was filed on January 29, 1975, and fifty-three months after *Blair* was published in the Atlantic Second advance sheets on March 1, 1975, this Court announces that, at long last a Rule of Criminal Procedure adopted by this Court in June 1973 will be fully enforced. As a proposed "cure," the suggested additional sixty day postponement is just a delay and must be regarded as utterly worthless. Is it not irresponsible to say in June 1979 that the 1975 prospective rule of *Blair* will be strictly enforced in September 1979?

Mr. Chief Justice Eagen seeks to justify the departure from Rule 1123(a) and *Blair* by asserting that trial courts and counsel may have justifiably relied upon a series of decisions purportedly creating a "limited" exception to *Blair*. But what Mr. Chief Justice Eagen perceives of as justifiable reliance is in reality no more than a misperception of and slovenly disregard of Rule 1123(a) and the case law of this Court. Indeed, even the very cases first creating the "exception" to *Blair* explicitly warned the bench and bar that failure to file written post-verdict motions was expressly disapproved. E. g., *Commonwealth v. Pugh*, 476 Pa. 445, 448, 383 A.2d 183, 185 (1978); *Commonwealth v. Perillo*, 474 Pa. 63, 66 n.2, 376 A.2d 635, 637 n.2 (1977); *Commonwealth v. Grace*, 473 Pa. 542, 546, 375 A.2d 721, 723 (1977). Is the majority now saying it did not mean what it said in 1973, 1975, 1977, and 1978 and that it will only now, in 1979, begin to follow its own admonitions and enforce its own rules?

Clearly the proposed curative measure does nothing more than create additional confusing and complicating side effects. Established precedent holds that where the post-verdict court strictly enforces Rule 1123(a) and refuses to consider issues not raised in written post-verdict motions, the issues are waived on appeal. E. g., *Commonwealth v. Carrillo*, 483 Pa. 215, 395 A.2d 570 (1978). In a fairly and evenhandedly administered unified judicial system can distinctions properly be made among litigants in the appellate courts on the basis of non-uniform application in the trial courts of Rule 1123(a)?

Our case law also firmly supports the position that if an issue is only raised orally before the post-verdict court, it is waived on appeal regardless of whether the trial court addressed the issue on its merits. E. g., *Commonwealth v. Waters*, 477 Pa. 430, 384 A.2d 234 (1978). I can perceive of no basis for distinguishing between appeals where the trial court has addressed issues raised in oral post-verdict motions and those where the trial court has addressed issues raised in a written brief or memorandum not included in the record. How is the effectiveness of appellate review possibly en-

hanced absent written post-verdict motions? Indeed, how on a silent record containing only boiler plate post-verdict motions can an appellate court determine whether a written brief or memorandum on other issues has been filed other than to take the unprecedented step of obtaining, by telephone or otherwise, off-the-record information? Experience demonstrates that frequently unfiled post-verdict briefs and memoranda are not even mentioned in appellate briefs or at oral argument. And if an appellee were to dispute the assertion that an unfiled brief or memoranda had been presented to the trial court are we to remand for a hearing to resolve that question of fact or credibility? Rule 1123(a) and *Blair* were designed specifically to avoid such unnecessary additional controversy and the accompanying burdens of legislation. Nothing less than strict enforcement of Rule 1123(a) and *Blair* can possibly resolve all these potential difficulties.

I would hold the issues appellant presents, and the majority addresses, waived.

## II

In addition to its failure to apply *Blair*, the majority errs by applying an erroneous legal standard to the unpreserved issues it addresses. Despite an express and repeated admonition of the trial court to all concerned not to discuss in the presence of the jury the results of a lie detector test, a police officer on the witness stand at the time of the court's order and testifying on behalf of the Commonwealth stated that appellant had failed the test. Appellant moved immediately for a mistrial and the court granted appellant's request. Appellant now contends that the officer's disregard of the court order produced the mistrial and under the double jeopardy clause, reprosecution is barred. I adhere to the view expressed in *Commonwealth v. Potter*, 478 Pa. 251, 276, 386 A.2d 918, 930 (1978) (Opinion in Support of Reversal), that for purposes of double jeopardy analysis the only satisfactory inquiry is whether the error causing the declaration of a mistrial was either grossly negligent or intentional.

This is the view of the Courts of Appeals for the Eighth and Fifth Circuits. *United States v. Martin,* 561 F.2d 135, 140 (8th Cir. 1977); *United States v. Kennedy,* 548 F.2d 608, 609 n.1 (5th Cir.), cert. denied, 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 140 (1977). The Second Circuit also appears to have rejected any strict requirement of an intent to provoke a mistrial. "Even absent such a provocation, retrial is prohibited if the judicial or prosecutorial error was 'motivated by bad faith or undertaken to harass or prejudice' the petitioner." *Drayton v. Hayes,* 589 F.2d 117, 121 (2d Cir. 1979) (quoting *Lee v. United States,* 432 U.S. 23, 33–34, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1974)).

Further compounding the majority's error is its examination of the conduct of the prosecuting attorney, rather than the misconduct of the Commonwealth's police witness. Here a police officer, an agent of the Commonwealth and a prosecution witness, gave prejudicial and unsolicited testimony that appellant failed a lie detector test. The witness' inexcusable and prejudicial remark followed the trial court's clear ruling, delivered in the presence of the police officer, indeed while the police officer was on the witness stand, expressly directing all concerned that the jury was not to be informed of the results of appellant's polygraph examination.

The double jeopardy clause

"embraces the defendant's 'valued right to have his trial completed by a particular tribunal.' The reasons why this 'valued right' merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial."

*Arizona v. Washington*, 434 U.S. 497, 503–05, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978) (footnotes omitted). This clause acts as a prohibition upon the Commonwealth and does not permit the unjustified distinction drawn by the majority between the prosecutor and the prosecuting police witness. Surely the prejudicial statement made after the court's express admonition which produced a mistrial here was no less damaging to the appellant's rights and no less the act of the Commonwealth than if it had been uttered by the prosecuting attorney himself. By subjecting appellant to retrial despite the misconduct of the police witness, the Commonwealth deprived appellant, in the words of the Supreme Court of the United States, of his "valued right to have his trial completed by a particular tribunal," multiplied the burdens which the appellant was compelled to endure, and improperly enhanced the risk of conviction.

LARSEN, J., joins in this concurring opinion.

MANDERINO, Justice, dissenting.

As the majority observes an accused is entitled to be protected against governmental actions intended to provoke mistrial requests. *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). Unless *governmental action* includes the type of conduct by an agent of the government such as occurred in this case, as well as bad faith conduct by a judge or prosecutor, appellant's constitutional rights are greatly abused.

In the case before us, the witness was a police detective with over nineteen years experience on the police force. It is inconceivable that he was lacking in the knowledge that testimony concerning polygraph tests is inadmissible. The detective's precise statement "he had flunked the polygraph exam" does constitute the type of declaration which is intended to provoke a mistrial. Therefore, appellant is protected by the double jeopardy clause.

It is always difficult to prove intent, and the intent of this witness is equally difficult to determine. Yet, one must note that the witness did not blurt out his statement on

direct examination but waited until cross-examination to embellish his testimony with the prejudicial statement. Further, this witness was present when the judge ruled concerning the inadmissibility of the polygraph test and cautioned the jury concerning it. Finally, the statement occurred after a recess. While we cannot say the statement was deliberately made, it is obvious that a grave potential for abuse exists in this area. The statement was not accidentally made by one totally unconnected with the government and who had no reason to know of the inadmissibility of such a statement. Under the circumstances of this case, if we are to adequately safeguard this appellant's constitutional rights and protect future defendants from similar conduct, we must hold the prosecution responsible for its witnesses. Appellant's conviction should be reversed and he is entitled to be discharged.