418 A.2d 542

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Eric P. RYLES.**

Superior Court of Pennsylvania.

Argued Aug. 28, 1979.

Filed Jan. 18, 1980.

Reargument Denied April 14, 1980.

548

Steven H. Goldblatt, Deputy District Attorney, Marianne E. Cox, Assistant District Attorney, of Philadelphia, for Commonwealth, appellant.

Ronald I. Rosen, Philadelphia, for appellee.

Before HOFFMAN, EAGEN and HESS, JJ.*

PER CURIAM:

These are appeals by the Commonwealth from an order of the Court of Common Pleas of Philadelphia suppressing an incriminating statement given by the accused, Eric P. Ryles, to police and certain physical evidence seized pursuant to a warrant obtained as a result of the information provided in the statement. The suppression court determined that the statement was obtained in violation of Pa.R.Crim.P. 130 and *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977) [Hereinafter: *Davenport*], and that the physical evidence was the fruit of the illegally obtained statement.

The Commonwealth argues that properly interpreted *Davenport* does not mandate suppression of the statement or its fruits and that, even if *Davenport* mandates suppression of the statement, its fruits should not be suppressed.

The facts are as follows:

Police arrested Ryles without a warrant at 1:45 p. m. on June 4, 1978 at 1236 North 18th Street, Philadelphia for the homicide of Olivia Parker. He was transported to the Police Administration Building where he arrived at 2:20 p. m. At 2:55 p. m., he was advised of his constitutional rights as dictated by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which he indicated he understood and waived. He then gave the police background information, such as name, address and age. At 3:20 p. m., an interview was begun. Approximately twenty minutes later, the interviewing detective noticed certain dark stains on parts of

* Chief Justice MICHAEL J. EAGEN of the Supreme Court of Pennsylvania, and Judge WARREN K. HESS of the Court of Common Pleas of Berks County, Pennsylvania, are sitting by designation.

Ryles' body. As a result, the detective consulted his supervisor and a search warrant was prepared. While the warrant was being prepared, the interview continued. At approximately 5:30 p. m., Ryles admitting stabbing, but denied raping, the victim. He also advised police of the whereabouts of bloodied clothing he had secreted.

While the statement was being taken, other detectives took the search warrant to arraignment court for judicial approval. At 5:55 p. m., the court approved the warrant. At approximately 6:15 p. m., a detective telephoned the arraignment court to advise the judge that Ryles would be brought to court for a priority arraignment. A message to this effect was left for the assigned judge, and the detective was told the judge would get the message.[1] At 6:55 p. m., the taking of Ryles' statement was interrupted so that the search pursuant to the warrant could be executed. After the search concluded about 7:17 p. m., Ryles read and signed the statement.

At 7:30 p. m., Ryles was taken to arraignment court where he arrived at 7:38 p. m., or five hours and fifty–three minutes after arrest. The judge, although assigned for a eight–hour shift which began at 4:00 p. m., was not present. The judge had left the court for supper after approving the warrant, had not received the telephone message, and had not left a message where he could be located as was customary. Ryles remained in the courtroom while police searched the building and surrounding area for the judge, but he could not be located.[2] Finally, at 8:08 p. m., the judge returned and arraignment took place at 8:10 p. m., or six hours and twenty–five minutes following arrest.

As a result of the statement, a second search warrant was obtained and executed. Physical evidence, particularly

---

1. The message indicated a "cut–off time of 8 p.m.," but, since the judge did not return until 8:08 p. m. and since he did not get the message, this mistake by the detective cannot be said to have caused the unavailability of the judge, discussed infra.

2. The judge may have returned to the court for a brief period at 7:00 p. m.

clothing, was seized as a result of the search pursuant to this warrant.

The statement and physical evidence obtained pursuant to the second warrant were ordered suppressed in the trial court. The court denied the motion to suppress evidence obtained pursuant to the first warrant.

In *Davenport*, our Supreme Court, after consideration of experience with *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972) [Hereinafter: *Futch*], which first announced a suppression rule as a means to enforce Pa.R.Crim.P. 130, announced a six–hour per se rule. The rule required suppression of any statement obtained between arrest and arraignment if arraignment does not occur within six hours of arrest. But, in fixing the relevant period, the court specifically stated a six–hour period would establish "a workable rule which can be readily complied with *in the absence of exigent circumstances.*" *Davenport*, supra, 471 Pa. at 286–87 n. 7, 370 A.2d at 306 n. 7. [Emphasis added.] The issue instantly is therefore whether the circumstances presented establish exigent circumstances under *Davenport* such that suppression is unwarranted. We rule they do.

An examination of *Futch* and its progeny clearly indicates the Supreme Court's rulings to effectuate prompt arraignment had as their focus control of the conduct of police. Instantly, the police complied with *Davenport* when they brought Ryles to court within six hours and attempted to ensure availability of a judge. Accordingly, we hold the unavailability of the judge instantly constitutes an exigent circumstance [3] and suppression under *Davenport* should not have been granted.

**3.** We do not mean to imply that the absence of any effort by the judiciary to afford prompt arraignment will also constitute an exigent circumstance. Many counties have established schedules for district judges to make themselves available and others, as in the case instantly, have established working shifts. If a case arose in which no judicial efforts were made to afford prompt arraignment by shifts, schedules, or the like, the drastic remedy of suppression might indeed be warranted because such would necessarily involve a total disregard of the right to a prompt arraignment and because such

There can be no doubt that suppression is a drastic remedy designed to deter illegal conduct and protect an individual's rights. *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *Commonwealth v. Williams*, 454 Pa. 368, 312 A.2d 597 (1973). In particular, suppression represents a judicial response to illegal activity by those not immediately subject to the supervisory authority of the courts, i. e., an indirect sanction on those the courts cannot directly sanction which renders fruitless the illegal activity and thereby deters that activity. Instantly, the reason the arraignment did not occur within six hours was the unavailability of the judge; hence, there is no illegal activity to deter. Furthermore, even if the conduct of the judge in absenting himself should be deterred [4] because it too interferes with the individual's right to a prompt arraignment, that deterrence can be achieved by our courts through their supervisory authority without resort to suppression of evidence, which interferes with society's interest in justice, at least where the illegality does not necessarily render the evidence unreliable as here.

We are fortified in our holding by the federal rule which, while not on all fours with *Davenport*, recognizes unavailability of a magistrate as a factor justifying delay in arraignment. 18 U.S.C. § 3501(c); *United States v. McCormick*, 468 F.2d 68 (10th Cir. 1972) *cert. denied* 410 U.S. 927, 93 S.Ct. 1361, 35 L.Ed.2d 588 (1972); *United States v. Del Porte*, 357 F.Supp. 969 (S.D.N.Y.1973) aff'd sub nom. *United States v. St. Jean*, 483 F.2d 1399 (2d Cir. 1973). We are also fortified

would show an abdication by the courts involved of their responsibility to exercise supervision over judicial activity.

4. We do not suggest or imply any improper or negligent conduct was involved. But, we assume it for purposes of our ruling in order to point out that, whatever conduct of an individual member of the judiciary may be involved, the direct supervisory authority of our courts of common pleas and of the appellate courts of this Commonwealth provides an adequate vehicle to deter it without resort to suppression on a per se basis.

In fact, the judge apparently first went to supper, returned briefly, and then went for a walk.

by the Supreme Court's references in *Davenport,* supra 471
Pa. at 286–87 n. 7, 370 A.2d at 306 n. 7, to the standards and
goals of the National Advisory Commission on Criminal
Justice, Corrections § 4.5 (1973), and to the Model Code of
Pre–Arraignment Procedure § 130.2 (1975) which indicate
the responsibility of police is *to take an accused before a
judicial officer.* In all respects, the police instantly complied
with their responsibility within the time allowed by *Daven-
port* and the absence of the judicial officer was beyond their
control.[5]

■ Even assuming the *Davenport* rule was not violated,
Ryles contends the suppression court's order should be af-
firmed because he was taken into police custody without
probable cause and all evidence secured after his arrest was
tainted by this initial illegality.[6]

"Probable cause exists if 'the facts and circumstances
which are within the knowledge of the officer at the time
of the arrest, and of which he has reasonably trustworthy
information, are sufficient to warrant a man of reasonable
caution in the belief that the suspect has committed or is
committing a crime.' *Commonwealth v. Culmer,* 463 Pa.
189, 195, 344 A.2d 487, 490 (1975)."

*Commonwealth v. Perkins,* 473 Pa. 116, 123 n.5, 373 A.2d
1076, 1082 n.5 (1977). Further, since the suppression court
found probable cause for the arrest, in reviewing the evi-
dence to determine if the standard was met, an appellate
court considers only the evidence presented by the Common-
wealth and so much of the evidence for the defense as

5. We need not determine if suppression of physical evidence seized
as a result of a statement obtained in a violation of *Davenport* is
warranted since the issue is rendered moot by our determination that
the statement was not illegally obtained.

6. The trial court ruled probable cause existed. If this was incorrect
and probable cause did not exist, the order of the suppression court
may not be reversed since there was a legitimate basis for its order
even though an incorrect reason was assigned. *Commonwealth v.
Hetherington,* 460 Pa. 17, 331 A.2d 205 (1975).

remains uncontradicted.[7] *Commonwealth v. Perkins*, supra. So viewed the record establishes the following:

The body of the victim was discovered by her boy friend in her bedroom at 1236 North 18th Street at about 10:00 a. m. The bedroom which the victim occupied was located in the front of the second floor of a boarding house. There were two other bedrooms on the second floor as well as three or four on the third floor. Ryles was the occupant of the rear second–floor bedroom.

When the police arrived at the scene, the victim's body, which was obese, was on the floor and was naked except for stockings pulled down around her ankles and a cloth on the upper part of her body. She had been stabbed numerous times. She was lying on her back with her legs spread in what appeared to be blood, and a chair, as well as bedding, was stained with blood. The room was in disarray. Three footprints made with blood were observable on the floor and, given the imprint, were apparently made by sneakers.

The second floor rear bedroom, i. e. Ryles', was also in disarray with men's clothing thrown around and drawers open. No other rooms in the house were upset. On the floor of Ryles' room, police found magazines and photographs depicting nude women including those of nude, obese women.

The police also learned from the victim's sister that, at 11:00 p. m. the prior evening, she had received a phone call from the victim during which the victim told her only Ryles and the victim were present in the house because her boy friend had just left. The police also learned that, while not present at 11:00 p. m. the prior evening nor when the body was discovered, two other males resided at the hcuse. Further, the door to Ryles' room was ajar when police arrived.

7. To the extent specific findings of fact were made and are supported by the evidence, we must accept them. *Commonwealth v. Willis*, 483 Pa. 21, 394 A.2d 519 (1978).

The police were also advised that Ryles was behind in the rent, although it was not clear to them whether the victim was necessarily connected to rent collecting or ownership.[8]

At 1:45 p. m., Ryles arrived at the boarding house. An officer observed he was wearing a jacket with no shirt or undershirt underneath it, pants, socks, and sneakers. The officer also observed a dark stain, although he could not observe the color, on top of one of the sneakers which led him to believe it could have been blood. The officer arrested Ryles.

Essentially, the evidence shows that a sexual attack may have been involved because of the condition and position of the victim's body[9] and Ryles' room had pictures of nude obese women and he returned home not fully clothed; that sneakers may have been worn by the assailant and Ryles returned home with a stained sneaker; that the only two areas in disarray in the house were Ryles' and the victim's; and, that Ryles was the last person known to be in the house with the victim before her body was discovered.

Ryles argues this knowledge was insufficient to justify a belief in a man of reasonable caution that Ryles committed the crime. We do not agree. That Ryles may have been involved could be inferred from his attire, particularly the stained sneaker[10] and the absence of a shirt, the disarray of only his and the victim's rooms, the magazines in his room, and he being the last person known to have been with the victim prior to the slaying.

8. The record is not clear as to this, but apparently the victim either partially owned or was related to the owner or owners of the house. What is clear is that, when the victim's boy friend was asked if the victim had any problems or troubles, he said Ryles was two months behind in his rent. This apparently led the officer to understand the victim was involved with the rents.

9. Other evidence, such as broken locks on both bedrooms involved suggested a burglary, but, contrary to the position taken in Ryles' brief, all other possibilities need not be discounted to establish probable cause.

10. Subsequent investigation has evidenced that the sneakers he wore when the attack occurred were not those he was wearing when arrested. But, this is irrelevant.

While, as the suppression court pointed out, no singular fact may have justified the arrest, cumulatively the facts are adequate to establish probable cause. *Commonwealth v. Perkins,* supra.[11]

The order insofar as it granted suppression is reversed, and the record is remanded.

HOFFMAN, J., files concurring and dissenting opinion.

HOFFMAN, Judge, concurring and dissenting:

I agree with the majority that the suppression court erred in suppressing the physical evidence obtained pursuant to the second search warrant. I believe, however, that the suppression court properly suppressed Ryles' inculpatory statement because it was obtained in violation of the *Davenport* rule.[1]

Our Supreme Court adopted the following rule in *Davenport*: "If the accused is not arraigned within six hours of arrest, any statement obtained after arrest but before arraignment shall not be admissible at trial." 471 Pa. at 286, 370 A.2d at 306. In a footnote immediately following that statement, our Supreme Court stated: "We recognize that it is difficult to fix any particular time limit. Nevertheless, we conclude that it is desirable to set such a standard, and that six hours provides a workable rule which can be readily complied with *in the absence of exigent circumstances." Id.,* 471 Pa. at 286 n.7, 370 A.2d at 306 n.7 (emphasis added). The majority, without discussion, construes this language as establishing an exception to the six hour per se rule. I disagree. I believe that the quoted language in the footnote was intended to explain the reason for choosing the six hour rule. If the Supreme Court intended an exception to the

11. Since we rule there was probable cause to justify the arrest, we need not explore the question of whether or not the challenged evidence was the "fruit" of the arrest.

1. Because this is an appeal by the Commonwealth from the suppression court's order suppressing Ryles' statement and physical evidence, I do not reach the issue of whether the suppression court erred in finding that the police had probable cause to arrest Ryles.

rule, it would have explicitly said so. Moreover, in subsequent cases stating the *Davenport* rule, neither the Supreme Court nor this Court has mentioned "exigent circumstances." *See, e. g., Commonwealth v. Williams*, 476 Pa. 344, 347 n.2, 382 A.2d 1202, 1204 n.2 (1978); *Commonwealth v. Triplett*, 476 Pa. 83, 89, 381 A.2d 877, 881 (1977); *Commonwealth v. Morton*, 475 Pa. 374, 379 n.3, 380 A.2d 769, 771 n.3 (1977); *Commonwealth v. Jefferson*, 274 Pa.Super. 140, 148 n.4, 418 A.2d 335, 339 n.4, (1979) (per curiam); *Commonwealth v. Rose*, 265 Pa.Super. 159, 166 n.7, 401 A.2d 1148, 1152 n.7 (1979) (plurality opinion); *Commonwealth v. Hadden*, 265 Pa.Super. 112, 114, n.1, 401 A.2d 826, 827 n.1 (1979); *Commonwealth v. Washington*, 259 Pa.Super. 407, 411 n.9, 393 A.2d 891, 893 n.9 (1978) (per curiam).

Construing the *Davenport* decision as adopting a rule which applies "in the absence of exigent circumstances" is contrary to the Court's purpose in adopting a six hour rule. The *Davenport* Court adopted this rule to eliminate the problems encountered in applying the *Futch* test. *Davenport*, 471 Pa. at 286, 370 A.2d at 306. The Court stated the intended impact of the *Davenport* rule as follows:

This rule will assure more certain and even–handed application of the prompt arraignment requirement, and will provide greater guidance to trial courts, the bar and law enforcement authorities. Such a rule will simplify the task of determining the admissibility of statements taken before arraignment and thereby further judicial economy. It will also lessen the burden on prosecution and defense resources. In many cases this rule should eliminate the need for pre–trial litigation of the admissibility of statements by the defendant and thus help reduce pre–trial delay. Moreover, a rule based on the length of delay between arrest and arraignment will better serve to deter violations of the prompt arraignment requirement and to ensure that the protections afforded at preliminary arraignment are made available without unnecessary delay.

*Id.*, 471 Pa. at 287–88, 370 A.2d at 306. The majority's construction of *Davenport* will invite litigation and require the

courts to engage in a case–by–case determination of whether the Commonwealth has shown exigent circumstances, contrary to the Supreme Court's intention in adopting the rule. Our Supreme Court may decide that "exigent circumstances" should be an exception to the *Davenport* rule; this Court, however, should not extend that rule under the pretext of following it.

In the instant case, it is undisputed that Ryles was not arraigned until six hours and twenty–five minutes after arrest. Because Ryles was arraigned after the six hour period mandated by *Davenport*, the suppression court correctly concluded that Ryles' inculpatory statement should not be admissible at trial. Having concluded that Ryles' statement is inadmissible under *Davenport*, it is necessary to address an issue not reached by the majority–whether the suppression court erred in suppressing physical evidence obtained as a result of Ryles' statement.

In his statement, Ryles told the police the location of the sneakers and trousers he had been wearing at the time of the incident. Based on this information, the police obtained a search warrant and seized sneakers, trousers, and boxer shorts at the address supplied by Ryles. The suppression court concluded that the physical evidence had to be suppressed because its admission would violate the doctrine announced by the United States Supreme Court in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1965).

In its well–known decision in *Wong Sun v. United States, supra,* the Supreme Court of the United States restated the principle that the exclusionary rule which prohibits the use of evidence obtained from an accused in violation of the Fourth or Fifth Amendments prohibits also the indirect use of such evidence. On the question of what evidence must be considered as obtained as a direct result of an unlawful invasion, and so excluded, the Court said, in a frequently quoted passage: "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal

actions of the police. Rather, the more apt question in such a case is 'whether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun, supra,* 371 U.S. at 487–88, 83 S.Ct. at 417, . . . quoting Maguire, Evidence of Guilt (1959).

*Commonwealth v. Whitaker,* 461 Pa. 407, 412–13, 336 A.2d 603, 606 (1975).

The Commonwealth contends that the suppression court should not have applied the *Wong Sun* test in this case. The *Davenport* rule is not constitutionally mandated; rather, it was adopted pursuant to our Supreme Court's supervisory power. *Davenport,* 471 Pa. at 286, 370 A.2d at 306. Therefore, neither the United States nor the Pennsylvania Constitution requires the exclusion of evidence obtained as a result of a statement which is inadmissible because the preliminary arraignment was held more than six hours after arrest. There does not appear to be any Pennsylvania appellate court decision applying the *Wong Sun* doctrine where the initial illegality arises from the violation of a nonconstitutional procedural rule. I believe that our Supreme Court would not apply the exclusionary rule in this case. In *Commonwealth v. Brown,* 470 Pa. 274, 368 A.2d 626 (1977), our Supreme Court stated:

The exclusionary rule originated to deter unlawful police practices by depriving law enforcement officials of the benefits derived from using unlawfully obtained information. [Citations omitted.]

Where, however, the admission of the proffered evidence does not represent an exploitation of the unlawful police practices the exclusion of relevant testimony would serve only to frustrate the objectives of the adjudicative process without providing any enhancement of that process . . .

*Id.,* 470 Pa. at 282, 368 A.2d at 630. As noted by the majority, "Instantly, the reason the arraignment did not

occur within six hours was the unavailability of the judge; hence, there is no illegal activity to deter." At 544. Because there was no police misconduct in this case, suppressing the physical evidence obtained as a result of Ryles' statement "would serve only to frustrate the objectives of the adjudicative process without providing any enhancement of that process . . ." *Commonwealth v. Brown, supra,* 70 Pa. at 282, 368 A.2d at 630. Therefore, I would hold that the physical evidence is admissible at trial.[2]

Accordingly, I would affirm the lower court's order suppressing Ryles' statement and reverse the lower court's order suppressing the physical evidence.

**2.** The Commonwealth also contends that the suppression court applied the wrong legal standard in determining whether the physical evidence would have been discovered independent of Ryles' statement. Because I conclude that the physical evidence should not be suppressed, I do not reach this issue.