491 A.2d 189

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Gary BROWN.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Lewis A. WISE.**

Superior Court of Pennsylvania.

Submitted June 13, 1984.

Filed March 29, 1985.

Petition for Allowance of Appeal Denied Aug. 26, 1985.

Eric B. Henson, Deputy District Attorney, Philadelphia, for Commonwealth, appellant.

John Packel, Chief, Appeals, Assistant Public Defender, Philadelphia, for appellee (at 3052).

Timothy A. Crawford, Philadelphia, for appellee (at 3053).

Before CIRILLO, BECK and CERCONE, JJ.

CERCONE, Judge:

Appellees Lewis A. Wise and Gary Brown were charged as participating in the robberies of a number of bars in the Philadelphia area which occurred from November 1981 through February 1982. Appellee Wise was identified by a witness as one of the felons in the Castle Bar. During interrogation, he inculpated himself as a participant in several other bar robberies in which the perpetrators all wore ski masks. Appellee Brown was identified as having robbed the 801 Bar and in the course of interrogation he admitted his role in various other bar robberies, in which witnesses had reported the robbers as having worn head coverings, making their identification similarly impossible.

The evidence elicited at the preliminary hearing consisted of various bar owners and barmaids who could testify as to the circumstances of the robberies, i.e., dates, number of perpetrators, amount of money taken, but who, with the exception of the 801 and Castle Bar incidents, could provide no identification of the robbers. (Some were able to say they were black men of a certain build). The identifications were provided by each detective's testimony as to the statements given by the appellees during interrogation.

■ Following a suppression hearing, the court granted appellees' respective motions as to the inculpatory statements since appellees had not been rewarned of their Miranda rights prior to interrogation on the numerous unsolved bar robberies in the police files. This is the Commonwealth's appeal from that suppression order. The Commonwealth is substantially handicapped in its prosecution of

appellees by the suppression of the statements in that they provide the only link of appellees to the robberies. Thus, this case is properly before us as an appealable order.[1] *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985) (Commonwealth was found to have absolute right to appeal a suppression order on its good faith certification that its prosecution is substantially handicapped.)

■ When we review an order suppressing evidence, we are bound by the lower court's findings of fact, if those findings are supported by the record. *Commonwealth v. Williams*, 287 Pa.Superior Ct. 19, 429 A.2d 698 (1981). No one is questioning the court's findings of fact in the instant cases. The court found that both defendants, in two separate interrogation sessions, were initially administered their Miranda [2] warnings as to the robbery in which each was implicated by a positive identification via a photo array by witnesses. Each defendant waived his rights and agreed to talk. While Brown admitted his role in the 801 Bar robbery, Wise initially denied that he robbed the Castle Bar. Wise subsequently admitted his role in the Castle Bar robbery after admitting robbing seven other bars. However, the court further found, and this is supported by the testimony of Detective Santiago, as to Brown, and Detective Carroll, as to Wise, that the interrogating detectives then proceeded to question appellees about their possible participation in numerous unsolved bar robberies. Each defendant did admit such participation in seven or eight additional robberies.

The suppression court concluded, under the authority of *Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983), *Commonwealth v. Dixon*, 475 Pa. 17, 379 A.2d 553 (1977), and *Commonwealth v. Richman*, 458 Pa. 167, 320 A.2d 351 (1974) that the procedure violated appellees' Fifth amendment privilege against self-incrimination.

1. The cases were consolidated for appeal as they involved the same issue.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

142

■ The Pennsylvania courts, in interpreting *Miranda,* have held that, in order for an accused to exercise his *Miranda* rights intelligently, he must have knowledge of the particular transaction under investigation. This does not mean that the accused need know the technicalities of the offense or every conceivable consequence which might flow from a *Miranda* waiver, but he does have a right to know of the general nature of the incident giving rise to the investigation.

■ Thus, the question for our determination is whether by informing each of the appellees at the time of the Miranda warning that he was a suspect in a particular bar robbery, did the officers adequately apprise appellees of the general nature of the incidents which gave rise to the investigation of the numerous other robberies. Were they so adequately apprised that the waiver with regard to the known robbery sufficed to provide for the voluntariness of the waiver as to a laundry list of unsolved robberies with fact patterns very similar to the first. For the reasons which follow, we find that the circumstances of these interrogations did not mandate re-warning of Miranda rights, and we therefore, reverse.

It is evident that there is a wide range of circumstances which may give rise to defendant's claim that his Miranda waiver was involuntary because he was not made aware of the nature of the crimes which are the subject of his interrogation. The courts have ruled that in the face of such a claim, the totality of the circumstances must be examined to determine whether re-warnings are necessary. The indicia to be considered include

(1) the time lapse between the last *Miranda* warnings and the accused's statement; (2) interruptions in the continuity of the interrogation; (3) whether there was a change of location between the place where the last *Miranda* warnings were given and the place where the accused's statement was made; (4) whether the same officer who gave the warnings also conducted the interrogation resulting in the accused's statement; and (5)

whether the statement elicited during the complained of interrogation differed significantly from other statements which had been preceded by *Miranda* warnings. *See Commonwealth v. Riggins,* 451 Pa. 519, 304 A.2d 473 (1973); *Commonwealth v. Ferguson,* 444 Pa. 478, 282 A.2d 378 (1971).

It is not difficult to comprehend the need to re-warn a suspect of his opportunity to assert his or her constitutional rights in circumstances in which he or she is brought into custody on relatively minor charges, and then is questioned on much more serious crimes without additional Miranda warnings. That was the situation in *Commonwealth v. Dixon, supra,* in which appellant had earlier been convicted of malicious mischief and was delinquent in her restitution payments. Police informed her of this infraction and then asked her to accompany them to the police station. Once warned of her Miranda rights as to that offense, police proceeded to interrogate her on the investigation of the death of her two-year-old son. As the Supreme Court stated in reversing her conviction,

"It is a far different thing to forego a lawyer where a traffic offense is involved than to waive counsel where first degree murder is at stake." *Commonwealth v. Collins,* 436 Pa. 114, 121, 259 A.2d 160, 163 (1969) (plurality opinion) in *Dixon, supra,* 475 Pa. at 22, 379 A.2d at 556.[3]

In *Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983), it was not clear that the questioning would cover several murders before the defendant was given the waiver form to sign. Both a violation of the Uniform Firearms Act and recklessly endangering another person were listed on

---

**3.** *Commonwealth v. Richman,* 458 Pa. 167, 320 A.2d 351 (1974) collects cases which stand for the general principle that "an intelligent and understanding waiver of the right to counsel is impossible where the defendant has not been informed of the crime which is being investigated." The *Richman* court applied this principle to waivers of line-up counsel in a scenario in which the appellant was subjected to a line-up procedure prior to being preliminarily arraigned. The court found that appellant's waiver of the right to counsel at time of line-up was involuntary.

the waiver form. The court concluded that even if the defendant had not been informed of the homicides as part of the subject of the questioning, the form itself could not have created an ambiguity in the defendant's mind. This was so in light of the fact that the defendants had handed the weapon which was the object of the minor charges to a witness; this same weapon had been used in one of the homicides under investigation. Moreover, all four homicides had occurred over the five days immediately preceding the investigation. Thus the court concluded that the defendant in question was necessarily aware of what incidents he was being questioned and it would be "tantamount to treating as fact that which is patently hypothesis and fantasy" *Id.*, 502 Pa. at 487, 467 A.2d at 294, to hold otherwise.

In the instant case, virtually no time elapsed between the waiver and the interrogation on the laundry list of unsolved robberies all of which were similar in nature as to crime and methods of commissions.[4] In other words, the gravity and type of the unsolved offenses were almost identical to that of the robbery in which each defendant was clearly a suspect.

As to appellee Brown, the length of the entire interview was two hours and twenty-five minutes; as to Wise, it was one hour and forty minutes. There was virtually no interruption in the continuity of each interrogation except for the minute or so which it took Detective Santiago to retrieve the list of unsolved robberies from the police file, and for a similar interruption to obtain food for defendant Brown. The same detectives conducted all challenged proceedings for the respective defendants in the same location. The fifth consideration is inapplicable here in which these cases do not involve two separate interrogations for each defendant, but rather, an interrogation for each which was expanded by the detectives to include additional similar

---

**4.** The time span for all of the robberies was less than three months; the actors carried weapons and made everyone lie on the floor of the bar; in almost all cases, actors wore head coverings.

crimes. Thus, the *Ferguson* criteria weigh in favor of the propriety of the interrogations.

A case which is most akin to the instant cases is *Commonwealth v. Hadden,* 265 Pa.Superior Ct. 112, 401 A.2d 826 (1979). The defendant had been arraigned for one burglary during which he had been advised of his Miranda rights and signed a printed form indicating that he understood them. Immediately after arraignment when police began to question him about unsolved burglaries, he was asked if he had been advised of his rights and remembered them. The defendant said yes. Then later, after the detective determined that the defendant had completed the eleventh grade and could read English, the detective, before taking the defendant's written statement, had him read a written statement of his rights. This court held, under these circumstances, that the defendant had been informed of his rights in such a manner as to assure that he understood them.

The court in *Hadden* relied heavily on the fact that appellant's expression of understanding of his Miranda rights closely preceded his interrogation on the additional burglaries, even though that expression pertained to the first burglary. Essential to the analysis was whether the person in custody was informed of his rights in such a manner as to assure that he understood them.

Looking at the instant cases, it is clear that both defendants expressed their understanding of their Miranda rights just minutes before the challenged parts of the particular interrogations. We cannot find that the embarking into questions pertaining to additional crimes of like gravity in the same interrogation automatically vitiates the expressed understanding of defendants' rights. Under the circumstances of this case it was not necessary to rewarn appellees of their Miranda rights. Thus, we must reverse.

The suppression court ruled that each defendant should have been re-warned since:

each offense, while similar in character, involved a separate criminal transaction occurring on different dates at

different locations. The decision to forego a lawyer and give a statement as to one crime in no way suggests a knowing relinquishment of these rights as to any other criminal transaction. The potential consequences attending one robbery indictment is (sic) far different from those attending six or eight or even twenty-four counts of robbery, whether similar or not.

We would agree with the court below, under relevant case law, if this were a case involving crimes of varying seriousness, in which the defendant's waiver to a minor offense had been asserted as sufficient to cover a more serious offense. However, in this case, the initial warnings stated that the subject matter to be discussed was armed robbery of a particular bar. This fact alone was sufficient to apprise the defendants of the seriousness of their predicament, thus allowing them to determine knowingly the necessity for counsel and the need to remain silent. Under the circumstances of these cases, then, appellees were made aware of the general nature of the occurrences which gave rise to the investigations. Thus, we find that they waived their rights to remain silent and to acquire counsel on all of the armed robberies mentioned in their statement.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.