506 A.2d 431

**COMMONWEALTH of Pennsylvania,**

v.

**Richard DIGGS, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 23, 1985.

Filed March 14, 1986.

Carl Marcus, Pittsburgh, for appellant.

448

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before WICKERSHAM, WIEAND and BECK, JJ.

BECK, Judge:

This appeal concerns allegations of counsel ineffectiveness for failure to raise certain grounds for suppressing two self-incriminating statements which appellant made to the police. The statements were introduced against appellant at a 1977 jury trial which resulted in appellant's conviction for robbery and second-degree murder.

Appellant did not institute a direct appeal from the judgment of sentence rendered on his convictions but subsequently filed a pro se Post Conviction Hearing Act[1] petition which, inter alia, sought permission to file post-verdict motions nunc pro tunc. The requested PCHA relief was granted, and through appointed counsel, appellant filed post-verdict motions which were denied. Represented by new counsel in this appeal, appellant argues the ineffectiveness of his post-verdict motions counsel and the ineffectiveness of his trial counsel. We affirm.

Sometime after 1:00 p.m. on August 4, 1977, appellant was arrested by the Chicago, Illinois, police in response to an outstanding Pittsburgh, Pennsylvania, warrant for appellant's arrest on homicide charges. Appellant was advised of his constitutional rights and was asked if he knew what happened in Pittsburgh. Appellant did not give a statement. At appellant's request, the Chicago police then took appellant to the Chicago apartment of one of appellant's friends. Thereafter, appellant was taken to Area 4 Homicide in Chicago where he arrived with the police at 3:00 p.m. and was against advised of his rights. This time appellant chose to waive his right to remain silent and for approximately one hour, appellant dictated a statement about the Pittsburgh homicide which had led to his arrest.

1. The Post Conviction Hearing Act appears at 42 Pa.C.S.A. §§ 9541–9551 and will hereinafter be abbreviated as PCHA.

At 4:00 p.m. the Chicago police called the Pittsburgh police to inform them of appellant's apprehension and were asked to question appellant about a second Pittsburgh murder unrelated to the warrant that triggered appellant's arrest (hereinafter "unrelated murder"). This "unrelated murder" and the circumstances surrounding appellant's questioning in regard to it form the basis of the present appeal.

Before appellant was asked about the "unrelated murder," appellant was readvised of his rights. Waiving his rights, appellant spent approximately one hour giving the Chicago police his first statement implicating himself in the "unrelated murder." When he finished his statement, appellant was transported to the Cook County Jail since it was then after 5:00 p.m. on August 4, and the record reflects that there were no provisions for extradition hearings in Chicago after 5:00 p.m. Appellant's bail status was reviewed on the night of August 4 by a night court judge, and at 9:00 a.m. on August 5, appellant was presented to a judge for formal notice of the warrant filed for his extradition on Pennsylvania homicide charges. The record establishes that appellant's processing comported with Illinois practice.

At 9:00 a.m. on August 6, 1977, two members of the Pittsburgh police arrived in Chicago with warrants authorizing them under the Uniform Criminal Extradition Act ("Extradition Act")[2] to return appellant to Pennsylvania. The Pittsburgh police officers went to the Cook County Jail where they saw appellant at 2:55 p.m. The officers arrived with appellant at Area 4 Homicide in Chicago at 3:10 p.m. At that time, appellant began to exhibit symptoms of heroin withdrawal and was reconveyed to Cook County Jail for methadone treatment. Following treatment, appellant was returned to Area 4 Homicide at 5:15 p.m. at which time appellant was again advised of his rights and again waived

2. *See* 42 Pa.C.S.A. §§ 9121–9148, for Pennsylvania's codification of the Extradition Act; Ill.Ann.Stat. ch. 60, ¶¶ 18–49 (Smith-Hurd), for Illinois' codification of the Extradition Act.

his rights and gave a second statement regarding the "unrelated murder."

On August 7, appellant and the Pittsburgh police officers flew from Chicago to Pittsburgh. During the flight, appellant was readvised of his rights, and he again waived them and gave the police a third statement about the "unrelated murder." Appellant and the police officers landed in Pittsburgh at noontime, and appellant was preliminarily arraigned in Pittsburgh at 3:15 p.m. and then detained at the Public Safety Building.

On August 8, after appellant was readvised of his constitutional rights, appellant made a fourth statement about the "unrelated murder." This statement detailed appellant's involvement in the murder and was tape-recorded by the Pittsburgh police.

Appellant's four statements regarding the "unrelated murder" became the subject of a suppression hearing. At the hearing, appellant's first statement to the Chicago police and appellant's fourth statement taped in Pittsburgh were both ruled voluntary and admissible. Appellant's second and third statements were suppressed as having been involuntarily offered while appellant was experiencing the effects of methadone which had been administered to him immediately before these two statements were made. Thereafter, appellant's first and fourth statements were introduced at appellant's jury trial and constituted the principal evidence upon which appellant was convicted.

Appellant now raises two issues concerning the alleged ineffective assistance of his post-verdict motions counsel, and concomitantly of his trial counsel, for failing properly to contest the admissibility of appellant's first and fourth inculpatory statements about the "unrelated murder." Appellant contends that his counsel should have argued that his first and fourth statements were suppressible because of the delay between appellant's arrest at 1:00 p.m. on August 4 and appellant's presentation at 9:00 a.m. on August 5 to a Chicago court of record for notice of the extradition warrant. Alternatively, appellant claims that

his counsel should have maintained that his fourth statement was suppressible as the tainted product of appellant's second and third statements which were ruled involuntary and inadmissible due to appellant's having uttered them while on medication.

In reviewing ineffectiveness claims, we presume counsel's stewardship to be competent and place upon defendant the burden of proving otherwise. *Commonwealth v. Dunbar*, 503 Pa. 590, 470 A.2d 74 (1983); *Commonwealth v. Litzenberger*, 333 Pa.Super. 471, 482 A.2d 968 (1984). To establish ineffectiveness, the defendant must show that the issue underlying his ineffectiveness claim is of arguable merit, that his counsel's actions were not reasonably designed to promote the defendant's best interest, and that he was so prejudiced by his counsel's error as to have been denied a fair trial. *Commonwealth v. Pierce*, 345 Pa.Super. 324, 498 A.2d 423 (1985). We begin by analyzing whether the issues upon which appellant premises his ineffectiveness claims have any arguable merit and note that counsel cannot be deemed ineffective for failing to pursue meritless issues. *Commonwealth v. Wilson*, 482 Pa. 350, 393 A.2d 1141 (1978).

First, appellant contends that his counsel should have objected to the initial statement which appellant made to the Chicago police prior to appellant's pretransfer extradition hearing before a judge. Appellant maintains that his initial statement is suppressible either because the delay between his arrest at 1:00 p.m. on August 4 and his pretransfer hearing at 9:00 a.m. on August 5 violated the Extradition Act's requirement that an accused be taken with "all practicable speed" before a judge, *see* 42 Pa.C.S.A. § 9135; Ill. Ann.Stat. ch. 60, § 31 (Smith-Hurd), or alternatively, because he could not have made an intelligent waiver of his right to remain silent before being informed at a pretransfer hearing of the charges against him.

In deciding whether appellant's hearing before a judge within twenty hours of his arrest constituted presentation to a judge with "all practicable speed," we consider both the

rationale for the Extradition Act's pretransfer hearing provision and the facts of the individual case.

Under the Extradition Act, a prompt pretransfer hearing serves two primary purposes: notice to the accused of the offenses charged against him and an opportunity for the accused to challenge his extradition by a writ of habeas corpus. *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981); *Commonwealth ex rel. Huey v. Dye,* 373 Pa. 508, 96 A.2d 129 (1953); *Commonwealth v. Jacobs,* 319 Pa.Super. 531, 466 A.2d 671 (1983). A prompt pretransfer hearing ensures that the accused will be timely advised of and afforded his rights under the Extradition Act including the right expeditiously to test the legality of his arrest. *See Dye; Jacobs;* 42 Pa.C.S.A. § 9131; Ill.Ann.Stat. ch. 60, ¶ 27 (Smith-Hurd supp.). At the hearing, the accused must be informed of the grounds for his arrest, the crimes charged against him, the demanding state's request for his extradition, his right to legal counsel, and his right to contest extradition through a writ of habeas corpus. *Cuyler; Dye; Jacobs;* 42 Pa.C.S.A. §§ 9131; Ill.Ann.Stat. ch. 60, ¶ 27 (Smith-Hurd supp.).

The accused's presentation with all practicable speed to a neutral judicial authority helps safeguard the reliability of evidence obtained from the accused by deterring or curtailing abusive, coercive, or otherwise unlawful police activity such as prolonged custodial interrogation. *Cf. Commonwealth v. Jenkins,* 500 Pa. 144, 454 A.2d 1004 (1982) (case involving Pennsylvania intrastate preliminary arraignment rule, Pa.R.Crim.P. 140); *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977) (case explaining underpinnings of Pennsylvania intrastate preliminary arraignment rule, Pa.R.Crim.P. 140). Therefore, due to its potential unreliability, evidence is suppressible if it was acquired as the result of, or by exploitation of, an unjustified delay between an accused's arrest and an accused's hearing before a judge. *Cf. Davenport* (incriminating statements are suppressible if obtained as a result of unnecessary delay of defendant's preliminary arraignment under

Pennsylvania intrastate rule). The sanction of suppression encourages compliance with the prompt hearing provision of the Extradition Act.

In the case sub judice, appellant was arrested at 1:00 p.m. on August 4 and given a pretransfer extradition hearing at 9:00 a.m. on August 5. The record shows that the time between appellant's arrest at 1:00 p.m. on August 4 and appellant's transportation to the Cook County Jail after 5:00 p.m. on August 4 was occupied by appellant's requested stop at a friend's apartment, appellant's two lengthy confessions, and the Chicago police's cursory investigation to identify appellant as a fugitive sought in Pittsburgh. Furthermore, the record establishes that appellant's imprisonment after 5:00 p.m. on August 4 until 9:00 a.m. on August 5 was occasioned by the unavailability of a judge to conduct appellant's pretransfer extradition hearing.[3]

■ In the context of this case, we conclude that appellant's initial statement about the "unrelated murder" is not suppressible as the fruit of any police action causing an unjustifiable delay of appellant's pretransfer hearing. *See Davenport.* The record lacks evidence of any dilatory tactics by the police between the time of appellant's arrest and 5:00 p.m. on August 4. The unavailability of a hearing judge after 5:00 p.m. was beyond the control of the police so any delay resulting therefrom should not be attributed to the police. *See Commonwealth v. Ryles,* 274 Pa.Super. 547, 418 A.2d 542 (1980), *reargument denied,* April 14, 1980, *cited in Jenkins* (unavailability of a judge is an exigent circumstance excusing delay of Pennsylvania intrastate preliminary arraignment). Under the totality of the circumstances in this case, we hold that appellant was

3. The police did not attempt to question appellant while appellant was incarcerated in the Cook County Jail on the evening of August 4 and the early morning hours of August 5 before appellant's judicial hearing. Thus, there is no evidence in this case of constant or unduly prolonged custodial interrogation which resulted in confessions.

afforded a pretransfer extradition hearing with all practicable speed on the morning of August 5.[4]

■ Next, appellant argues that his first statement about the "unrelated murder" is inadmissible because it preceded the pretransfer extradition hearing at which he was formally apprised of the charges against him. Appellant contends that he could not make an intelligent waiver of his right to remain silent prior to his hearing before a judge. This issue has already been settled in intrastate cases involving Pennsylvania's prompt preliminary arraignment rule, Pa.R. Crim.P. 140, and we find the analysis in those cases equally germane to interstate cases involving prompt pretransfer hearings under the Extradition Act.

Expeditious hearings are mandated under both Rule 140 and the Extradition Act in order to avoid unreliable evidence in the form of confessions caused by prolonged or otherwise coercive custodial questioning and to ensure that the accused receives notice of his legal rights and an opportunity to exercise same. *See, e.g., Jenkins* (preliminary arraignment case under Pa.R.Crim.P. 140). Accordingly, where an accused is not given a prompt hearing under the particular facts of a case, a court will suppress any inculpatory statements made by the accused during the unexcused delay before his hearing. *See* discussion of appellant's first contention, *supra; Jenkins; Ryles.*

■ However, the prompt hearing rules were not intended to "cut off freely volunteered confessions of guilt [or] ... impede legitimate law enforcement efforts. The primary purpose ... was to discourage the obtaining of incriminatory information through coercive means." *Jenkins,* 500 Pa. at 150, 454 A.2d at 1007. Therefore, we hold that confessions such as appellant's first statement about the "unrelated murder," which are made within the period

---

**4.** Our holding recognizes that the courts of Pennsylvania lack jurisdiction over the judiciary of a sister state where a fugitive may seek asylum. See *Commonwealth v. Ryles,* 274 Pa.Super. 547, 551 n. 3, 418 A.2d 542, 544 n. 3 (1980), *reargument denied,* April 14, 1980.

before a promptly convened judicial hearing are admissible into evidence as long as they satisfy the other, applicable standards for introduction such as *Miranda* warnings, voluntariness, and relevancy to the case being tried. *See Jenkins; Davenport; Commonwealth v. O'Bryant,* 320 Pa.Super. 231, 467 A.2d 14 (1983); *Ryles.*

In view of our conclusion that appellant's first statement was not suppressible as the product of an illegal pre-hearing delay, appellant cannot succeed in claiming that his fourth statement should be suppressed as the tainted by-product of his first statement. A fruit of the poisonous tree argument requires an antecedent illegality. *See Commonwealth v. Allessie,* 267 Pa.Super. 334, 406 A.2d 1068 (1979) (confession resulted from unnecessary delay of preliminary arraignment under Pa.R.Crim.P. 140). Since appellant's first statement was not unlawfully obtained, appellant's fourth statement was not acquired by exploitation of an illegality traceable to appellant's first statement.

As an alternative rationale for suppressing his fourth statement, appellant asserts that his fourth statement was unduly affected by his second and third confessions which were ruled involuntary and inadmissible. An otherwise valid confession is not automatically inadmissible because it follows an earlier illegal confession. *Commonwealth v. Chacko,* 500 Pa. 571, 459 A.2d 311 (1983). If the later confession was not acquired by exploitation of the prior illegality but was obtained by sufficiently distinguishable means, the later confession is purged of the taint stemming from the earlier illegality and is admissible into evidence. *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *Chacko.*

In this case, appellant's fourth statement about the "unrelated murder" was preceded not only by two invalid confessions but also by a pretransfer extradition hearing in Chicago, a preliminary arraignment in Pittsburgh, and one

valid confession, i.e., appellant's first statement to the Chicago police. On August 4, appellant made a valid initial confession. The following day, appellant was given a pretransfer hearing before a Chicago judge. On the afternoon of August 6 and the morning of August 7, appellant made two additional incriminating statements, both ruled involuntary due to appellant's having been medicated at the time. On the afternoon of August 7, appellant was taken before a Pittsburgh magistrate for a preliminary arraignment. The next day, appellant was again apprised of his constitutional rights and again chose to waive them by giving a fourth statement which the police taped.

■ The evidence of record does not suggest that the police attempted to obtain appellant's fourth confession by exploiting appellant's invalid second and third confessions or that appellant's invalid confessions exerted a psychological pressure upon appellant to offer a fourth confession. *See Chacko.*

To the contrary, the occurrence of the Pittsburgh preliminary arraignment between the time of appellant's invalid confessions and appellant's fourth confession, coupled with the time which lapsed between appellant's invalid confessions and appellant's fourth confession and the reiteration of *Miranda* warnings before appellant gave his fourth statement evidence that appellant's fourth confession was an act of free will. *See Chacko.* Considering all of the circumstances in this case, we conclude that appellant's fourth confession was properly admitted into evidence because it was purged of any taint derived from appellant's invalid second and third confessions.

Inasmuch as none of the issues underlying appellant's ineffective counsel claims possess arguable merit, we hold that appellant's attorneys were not ineffective. *See Wilson; Pierce.*

Affirmed.